IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 4, 2012

**STATE OF TENNESSEE v. TINA DEHART**

**Direct Appeal from the Circuit Court for Madison County**
**No. 11-622, 09-335     Donald H. Allen Judge**

**No. W2012-00519-CCA-R3-CD  - Filed December 14, 2012**

In case 09-335, the Defendant, Tina Dehart, pled guilty to theft of property valued over $1,000, and the trial court sentenced her to three years to be served on community corrections, but it later granted her judicial diversion.  In case 11-622, the Defendant pled guilty to theft of property valued over $500.  After her plea, the trial court determined that her new conviction violated the terms of her probationary sentence in case number 09-335. The trial court sentenced the Defendant to three years in case number 09-335 and to two years in case number 11-622.  The trial court ordered that the sentences be served consecutively and in confinement.  On appeal, the Defendant contends that the trial court erred when it denied her request for alternative sentencing.  After a thorough review of the record and applicable case law, we conclude that there exists no error in the judgments of the trial court.  We, therefore, affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Tina Dehart.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts and Background**

This case arises from the Defendant's acts of theft on multiple occasions. In case number 09-335, the Madison County grand jury indicted the Defendant for theft of property valued over $1,000. A transcript of the guilty plea hearing is not included in the record. The indictment alleged:

[O]n 3-19-09 Officer received a call to Lowe's on S. Highland regarding an internal investigation. Lowe's Officials reported that they had conducted an internal investigation into thefts at the store and had identified a suspect who had been taking money after creating fraudulent refunds. They identified the suspect as [the Defendant]. [The Defendant] had been interviewed by Lowe's Officials and admitted to taking money. Lowe's estimates the loss at $2,229.86.

In the presentence report, the Defendant offered a handwritten version of the theft. In it, she stated:

I made the worst mistake of my life. I took money from my work place (Lowe's). I know it was wrong. I am very sorry. I just want to make it right and pay the money back. I done [sic] it to pay my bills. I was losing my place to live and all my bill[s] were behind and I didn't know what to do and made a very bad choice.

On August 18, 2009, the trial court accepted the Defendant's guilty plea and sentenced the Defendant to three years, as a Range I offender. On August 20, 2009, the trial court issued an order in which it placed the Defendant on deferred probation, pursuant to the judicial diversion statute, for a period of three years, as long as the Defendant did not receive any felony or Class A misdemeanor convictions. The trial court ordered that the Defendant's probation be supervised by community corrections and that, while on deferred probation, the Defendant perform 100 hours of community service work at the rate of 8 hours per month. The trial court also ordered the Defendant to pay court costs and restitution, submit to random drug screens, maintain full-time employment, stay away from Lowe's, and obey all the laws of this state and the community in which she resided. In the order, the trial court stated:

Upon any violation of the conditions of deferred probation and/or Community Corrections, the Court shall enter an adjudication of guilt and impose [a] sentence. If no violations of deferred probation and/or Community Corrections occur and upon the [D]efendant's submission of an Order of Dismissal, the Court will enter an Order of Dismissal at the end of the 3-year

period and further order that the official public records be expunged at that time with the costs of expungement taxed to the [D]efendant.

On May 27, 2011, the Defendant's community corrections officer filed an affidavit alleging that the Defendant had violated the conditions of her community corrections sentence by failing to obey the laws of the United States. The affidavit alleged that the Defendant had been arrested by the Jackson Police on May 23, 2011, and charged with embezzlement and theft. Based upon this affidavit, the trial court issued a warrant for the Defendant's arrest.

On January 3, 2012, in case number 11-622, the Defendant pled guilty to theft of property valued over $500. During the guilty plea hearing, the Defendant's attorney noted that the Defendant was still reporting to community corrections as part of her deferred probation/judicial diversion sentence. The trial court ensured that the Defendant understood that, by pleading guilty, the Defendant was going to have a conviction on her record that would obviously affect her placement on judicial diversion. The trial court told her that it was going to set a hearing to sentence her on both of her cases. The Defendant acknowledged that she understood.

The State informed the trial court that, had the case gone to trial, the evidence would show that:

[The Defendant] was an employee at Southside Liquor and Wine here in Jackson, Madison County, located in south Jackson here. Between March 11 of 2011 and May 21st of 2011, there was some money that was missing or a theft that was occurring at the store. On May 24th of 2011, it was discovered and reported that [the Defendant] was voiding sales and charging customers for merchandise that wasn't entered in the cash register and thus keeping the money. They observed this on video and were able to capture that and observed [the Defendant] doing these things between those dates in March and May of last year. The total amount of the business loss was $786, so it is over $500. Thus the State would show at trial that [the Defendant] between March 11th of 2011 and May 21st of 2011 did knowingly obtain or exercise control over property being cash over the value of $500 without the effective consent of the owner being Mr. Lindsey who is the owner of that store, Bob Lindsey, with intent to deprive the owner of that property.

On February 13, 2012, the trial court held a sentencing hearing to determine the Defendant's sentence on both cases 09-335 and 11-622. At the sentencing hearing, the State

offered the presentence report. In the report, the Defendant offered this handwritten statement about this theft:

> First of all I want to say to Mr. Lindsey that I am truly sorry for what happen[ed]. The reason that this happen[ed] was my husband has a drug problem and he took everything worth anything that I had and always took all the money for his addiction. And my daughter was getting ready to graduate high school. I didn't have any money to get what she needed. I couldn't tell her she couldn't have a dress for her senior prom or a cap & gown for her graduation so I done [sic] something very dumb [and] made a wrong decision.

Brandon Lindsey testified at the hearing that his family owned Southside Liquors, where the Defendant had been employed. He said the Defendant worked at the business for approximately 18 months. He described the events leading to the Defendant's theft convictions, stating that he started to look at some transactions occurring at the liquor store and realized that there was merchandise for which he was not being paid. He said that the merchandise was being rung up on the register and then, before the cashier hit the "tend" button, the transaction was being voided and the money kept by the cashier. Lindsey testified that the Defendant was the cashier working at the time of these transactions.

Lindsey testified that he contacted police and informed them of his suspicions. He gave officers a surveillance video of these transactions, which showed that $662.93 had been taken. He said he suspected more money had been taken, but he only had video proof of those transactions. Lindsey said that, as a result of the theft, his business incurred additional debt of $800, which was paid to a company to go through all the video files and compile those showing the theft.

During cross-examination, Lindsey testified that the Defendant was fired after he discovered the theft. He said his grandfather, Bobby Lindsey Sr., was the owner of the liquor store.

Elisa Reyes, the Defendant's probation officer, testified that she supervised the Defendant beginning in 2009. She said that she filed the affidavit alleging the Defendant violated her probation based upon the Defendant's arrest. Reyes testified that the Defendant had paid $500 of the $2229.86 that she owed to Lowe's in restitution. Reyes said that, other than her new arrest, the Defendant had not violated her probation in any other way. During cross-examination, Reyes confirmed that the Defendant had maintained employment throughout the duration of her probation and that her arrest was her only violation.

Upon questioning from the trial court, Reyes testified that the Defendant had completed over half of her court-ordered community service hours. Reyes said the Defendant had also completed her drug and alcohol assessment. The Defendant's first and only drug test came back negative.

The Defendant testified that she worked for approximately two years at Southside Liquors. She said that she began taking money from the store in March 2011 after her husband, who was a drug addict, "took every penny that [she] had." She explained that, at the time, her daughter was graduating high school. This was a great accomplishment because her daughter had been shot, which resulted in her having five different brain surgeries. Despite this, her daughter was scheduled to graduate with a normal diploma. The Defendant said that she had saved money for her daughter's graduation cap and gown and for her prom dress, but her husband took the money. The Defendant, fearing that she would be unable to buy those items for her daughter, took money from the store.

The Defendant agreed that she took around $600, and she apologized for her actions, saying she "made a bad decision." The Defendant agreed that her previous conviction involved her stealing money from her employer, and she said she did not learn her lesson the first time. The Defendant said she was, at the time of the hearing, employed at a BP gas station. The Defendant testified that she was prepared to pay the $600 she owed to Southside Liquors. The Defendant expressed her desire to have this case resolved and to move to Arizona.

Upon questioning by the trial court, the Defendant agreed that she had only paid about half of what she owed in restitution to Lowe's. She explained that she had undergone several surgeries and was unable to work for some period of time. The trial court asked the Defendant why she had not yet completed her community service hours, and the Defendant said that she thought she only had twenty hours left and that she had not yet completed those twenty hours because of her work schedule.

Based upon this evidence and the arguments of counsel, the trial court revoked the Defendant's judicial diversion, and entered the judgment. The trial court noted that the Defendant had, in that case, pled guilty and agreed to accept a three-year sentence, which the trial court imposed. In its oral findings, the trial court noted that the Defendant had failed to pay the monthly $100 payment she owed in restitution to Lowe's and court costs. The trial court further noted that the Defendant had not completed the required eight hours per month of community service. The trial court confirmed that it was imposing the Defendant's original sentence in that case.

The trial court then discussed the facts of the theft from Southside Liquors. It noted that this was not a "one time" theft but that it was a series of thefts that occurred over a period of more than two months. The trial court considered the Defendant's history, mitigating and enhancement factors, and the Defendant's potential for rehabilitation.

The trial court sentenced the Defendant to two years. The trial court ordered that the sentences be served consecutively and in confinement, for an effective sentence of five years in confinement.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied her request for alternative sentencing. She asserts that, while she committed her second theft while on judicial diversion for her first theft conviction, she has demonstrated a willingness to work. Further, she had paid over half her court costs and restitution, completed over half of her community service, and expressed her willingness to pay back her second victim. For these reasons, she asserts the trial court should have sentenced her to an alternative sentence. The State counters that the trial court correctly denied the Defendant an alternative sentence.

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2), (d) (2010); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). In 2005, the Tennessee General Assembly amended the sentencing law in order to bring Tennessee's sentencing scheme into compliance with United States Supreme Court rulings on the subject. *See United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004).

Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors applied to the defendant's sentence. T.C.A. § 40-35-401(b)(2) (2004). The 2005 amendments, however, deleted, as grounds for appeal, a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9. As a result, the appellate courts were "left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence." *Carter*, 254 S.W.3d at 345-46.

Appellate review of sentences has been *de novo* with a presumption of correctness. In a recent decision, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court

announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Susan Renee Bise*, __ S.W.3d __, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *19 (Tenn. Sept. 26, 2012).

A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

The "presumption of reasonableness" applied to sentences imposed by trial courts "'reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case .'" *Susan Renee Bise*, 2012 WL 4380564, at *15 (quoting *Rita v. United States*, 551 U.S. 338, 341 (2007)). A presumption of reasonableness "simply recognizes the real-world circumstance that when the judge's discretionary decision accords with the [Sentencing] Commission's view of the appropriate application of [sentencing purposes] in the mine run of cases, it is probable that the sentence is reasonable." *Rita*, 551 U.S. at 350-51.

Regarding alternative sentencing, the Tennessee Supreme Court noted that, due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347, (Tenn. 2008) (citing T.C.A.§ 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* (footnote omitted). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6) (2010). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them. T.C.A.§ 40-35-102(6) (2010) (emphasis added). Recently, our Supreme Court has explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Christine Caudle*, __ S.W.3d __, No. M2012-01172-SC-R11-CD, 2012 WL 5907374, at *7 (Tenn. Nov. 27, 2012).

If a defendant seeks probation, then that defendant bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2010). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2010), Sentencing Comm'n Cmts.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2010).

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103 (2010).

When denying the Defendant an alternative sentence, the trial court found that the measures less restrictive than confinement had recently been applied unsuccessfully to the Defendant. The trial court noted that, for the Defendant's first theft conviction, the trial court had diverted her conviction and sentence, after the completion of three years of probation. While on probation, the Defendant committed a second theft, this time from a different employer. The trial court considered the Defendant's second theft conviction while on probation as indicative of her lack of potential for rehabilitation. The trial court noted that several enhancement factors applied, that the Defendant had a history of criminal convictions or behavior, noting her several misdemeanor convictions, that she failed to comply with the

conditions of a sentence involving release into the community, that she committed the second theft while on probation for theft, and that she abused a position of trust in committing the theft. *See* T.C.A. § 40-35-114 (1), (8), (13), and (16) (2010). After reviewing the record, we conclude that it supports the trial court's findings and that there is ample evidence upon which the trial court could base its denial of an alternative sentence. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based on the above mentioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE